# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAUL JUSTAD,                    )
                                )
        Plaintiff,              )
                                )
                                )
     v.                         )    1:17CV219
                                )
                                )
BANK OF AMERICA CORPORATION     )
and BANK OF AMERICA,            )
NATIONAL ASSOCIATION,           )
                                )
        Defendants.             )
                                )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Bank of America's "Motion for Judgment on the Pleadings" (Docket Entry 10) (the "Motion"). For the reasons that follow, the Court should deny the Motion.

## BACKGROUND

Paul Justad filed a Complaint against Bank of America Corporation and Bank of America, National Association (collectively, "Bank of America") for copyright infringement. (See Docket Entry 1, ¶ 44.)[1] The Complaint alleges as follows:

Justad holds a federally registered copyright in the "Host Robot," a computer program that functions as a "PC-to-Mainframe automation tool." (Id., ¶¶ 12, 13, 15.) In or around 2000, Bank

---

[1] Bank of America, National Association constitutes a wholly owned subsidiary of Bank of America Corporation. (Docket Entry 1, ¶ 3.)

of America engaged Justad as a software consultant.  (Id., ¶ 16.) During the consulting period, Justad aided Bank of America with their "Account Control Automation Project" (the "ACAP").  (Id., ¶ 17.)  "[A]s part of the proof of concept phase," Justad used the Host Robot to demonstrate an automated method for conducting "mainframe transactions, like debit and credit card exceptions." (Id., ¶ 18.)  Following September 11, 2001, while the ACAP was still under development, Bank of America terminated several contractors, including Justad. (Id., ¶¶ 24, 25.)

Twelve years later, Bank of America again engaged Justad as a consultant.  (Id., ¶ 27.)  At that time, Justad discovered that, following his previous termination, Bank of America had installed the Host Robot on multiple servers, and "during the entire period from 2001 forward" continued to use, copy, and deploy the "Visual Basic 6.0 modules" that constitute the Host Robot.  (Id., ¶¶ 28-30.)  As of 2015, Bank of America employed the Host Robot to automate "thousands of debit/credit card claims" daily, a practice that Justad believes continues to occur.  (Id., ¶¶ 28-30, 33, 36.) Bank of America did not and does not possess a license or Justad's permission to use, copy, distribute, display, or reproduce that software following Justad's involvement in the concept phase, including in any production environment.  (See id., ¶¶ 30, 32, 44.)

In response to these allegations, Bank of America filed an Answer to which it attached a General Release and Program Agreement (Docket Entry 9-1) (the "Agreement"), which, according to Bank of America's Brief in Support of the Motion, bars Justad's claim (see Docket Entry 12 at 1-2). More specifically, Bank of America contends that, in executing the Agreement to receive severance benefits upon his termination in September 2015, Justad relinquished his ability to bring the instant copyright infringement claim. (See id.) As such, Bank of America maintains that the Court should enter judgment in its favor on the pleadings. (See id.) Justad disputes Bank of America's contentions. (See, e.g., Docket Entry 16 at 3 ("While Mr. Justad contends that the Agreement presents no bar to his claims, by its terms it does not bar his claim for copyright infringement occurring after September 24, 2015.").)

## DISCUSSION

### I. Relevant Standards

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, the Court considers only the pleadings, (i) taking all factual allegations in the Complaint as true, (ii) taking all factual allegations in the Answer as "true only where and to the extent they have not been denied or do not conflict with the [C]omplaint," and (iii) drawing

all reasonable inferences in favor of the nonmoving party. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (internal quotation marks omitted). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985). In resolving a motion for judgment on the pleadings, "the [C]ourt may consider the [C]omplaint, the [A]nswer, and any documents incorporated by reference into these pleadings." Crisp v. Allied Interstate Collection Agency, 149 F. Supp. 3d 589, 594 n.5 (M.D.N.C. 2016). Notably, "[b]ecause the burden of establishing an affirmative defense[, such as a release agreement,] rests on the defendant asserting it, a motion under . . . Rule 12(c) is generally not the appropriate vehicle to mount such a challenge." McQuade v. Xerox Corp., No. 5:10-CV-149, 2011 WL 344091, at *3 (E.D.N.C. Feb. 1, 2011). It is only in the "rare circumstances" where "all facts necessary to deciding the issue clearly appear" on the face of the pleadings that "the [C]ourt will reach an affirmative defense through a motion under Rule 12(c)." Id.

When asked "[t]o enter judgment [on the pleadings] on the basis of a plaintiff having signed a release agreement, the [C]ourt

conducts a two-step analysis to determine (1) whether the release agreement is valid; and (2) if it is, whether the agreement's plain language bars the plaintiff's claims." Harris v. Ann's House of Nuts, No. 4:13-CV-0039, 2013 WL 5592936, at *2 (E.D.N.C. Oct 10, 2013). Under North Carolina law, "[w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the [C]ourt[,] and the [C]ourt cannot look beyond the terms of the contract to determine the intentions of the parties." Piedmont Bank & Trust Co. v. Stevenson, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (1986).[2]

**II. Analysis**

**A. Validity**

Justad does not dispute the authenticity of the Agreement (see Docket Entry 16 at 3), but he does not concede the validity of the Agreement (see id. ("Justad contends that the validity of the Agreement may be in question.")). Moreover, Justad asserts that the Court cannot reach the issue of validity on a motion for judgment on the pleadings. (See id. at 6 & n.1 (asserting that a determination of the Agreement's validity would "involve[] matters that go beyond the pleadings").) Justad's argument possesses merit.

---

[2] North Carolina law governs the Agreement. (See Docket Entry 9-1, ¶ 14.f.)

When a plaintiff's pleadings address a release agreement, a court may address validity. See, e.g., Harris, 2013 WL 5592936, at *1, *3 (observing that "[i]n his amended complaint [the plaintiff] alleges that he signed the release agreement" and concluding that "[t]he release agreement at issue here is valid"); McQuade, 2011 WL 344091, at *3-*4 (explaining that "[i]n her complaint, [the] plaintiff alleges that she executed [a release]" and analyzing validity). The Complaint does not reference the Agreement. (See generally Docket Entry 1.) Bank of America contends that Justad cannot contest the Agreement's validity because he accepted its benefits (Docket Entry 9 at 7-8), and, as a general rule, acceptance of severance benefits precludes a challenge to the validity of the severance agreement, see VF Jeanswear Ltd. P'ship v. Molina, 320 F. Supp. 2d 412, 422 (M.D.N.C. 2004) ("If [a party] knew the facts and circumstances of the execution of the release and knew its provisions, and then accepted its benefits he is thereby estopped to deny its validity." (citing Presnell v. Liner, 218 N.C. 152, 154, 10 S.E.2d 639, 640 (1940))); see also Harris, 2013 WL 5592936, at *3 ("[A] plaintiff seeking to invalidate a contract because of fraud or duress must first return any consideration received pursuant to that contract." (footnote omitted)). Bank of America's Answer states that it "made all severance payments due to Plaintiff under the . . . Agreement, and [that] Plaintiff accepted and deposited those payments into his

account." (Docket Entry 9 at 7-8.) Bank of America also maintains that Justad "never sought to repudiate, void, or contest the . . . Agreement." (Id. at 8.)

As with the Agreement, however, the Complaint does not mention any severance payments. (See generally Docket Entry 1.) Bank of America's allegations regarding the Agreement's validity thus qualify as contested, thereby precluding judgment on the pleadings. See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1279 (3d ed. 2017) ("[S]ince no responsive pleading to an answer is permitted, facts raised for the first time in an answer are considered denied, thus presenting material issues of fact precluding a Rule 12(c) adjudication."). Because "all facts necessary to deciding the issue" do not appear on the face of the pleadings, the Court cannot "reach [Bank of America's] affirmative defense." McQuade, 2011 WL 344091, at *3. For this reason alone, Bank of America's Motion fails.

**B. Language**

In addition, the Court should not conclude (at least at this stage of the proceedings) that the language of the Agreement bars copyright claims arising after its execution. As it concerns the instant case, the Agreement provides:

> a. I . . . fully waive, release and forever discharge Bank of America . . . from any manner of suits, actions, or causes of action, including any claim for attorney's fees or costs, existing at the time I sign this Agreement, whether currently known or unknown to me, under any possible legal, equitable, contract, tort or

>    statutory theory. . . . With the exception of those
>    claims set forth in paragraph 3(e), . . . this General
>    Release includes, but is not limited to, claims arising
>    out of or in any way related to my employment and/or
>    separation from employment . . . .
>
>    d. . . . I expressly agree that the General Release will
>    extend and apply to all claims, injuries and damages I
>    may have against Bank of America or any Released Parties
>    at the time I sign the Agreement . . . .
>
>    e. . . . I acknowledge that the General Release does not
>    prohibit the following rights or claims: 1) claims that
>    first arise after the date I sign the Agreement . . . .

(Docket Entry 9-1, at ¶ 3.)

Bank of America argues that the language of the Agreement precludes Justad from bringing the instant claim for two main reasons. First, it maintains that the plain language of the Agreement (in particular, "future-oriented" terminology) bars Justad from bringing claims for infringement after execution of the Agreement. (See Docket Entry 17 at 1-6.) Second, Bank of America highlights decisions indicating an obligation for a party to expressly reserve the right to bring future claims when he or she knows of facts giving rise to such claims at the time of a settlement agreement's execution. (See id. at 6-8.)

Justad, meanwhile, emphasizes that the Agreement's plain language provides that he retains the right to bring claims arising out of acts postdating the Agreement. (Docket Entry 16 at 3.) He asserts that, because "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief" (id. at 4 (quoting Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992))),

-8-

and, because "Bank of America here engaged in acts of infringement after the date of the Agreement," the Agreement does not bar him from bringing the instant copyright claim, at least as it pertains to Bank of America's post-termination conduct, id.

With respect to Bank of America's first contention, the Agreement arguably contains some future-oriented language. In particular, Paragraph 3.d provides that Justad "expressly agree[s] that the General Release will extend and apply to all claims, injuries and damages [he] may have against Bank of America . . . at the time [he] sign[s] this Agreement . . . ." (Docket Entry 9-1, ¶ 3.d (emphasis added).) To support this point, Bank of America relies primarily on Augustine Med., Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367 (Fed. Cir. 1999), in which Augustine Medical, Inc. ("Augustine") sued Progressive Dynamics, Inc. ("Progressive") for patent infringement. (See, e.g., Docket Entry 17 at 3 ("The leading case on this issue is *Augustine Med., Inc. . . .*").) In a previous dispute, Augustine sued Progressive for unfair competition and misrepresentation stemming from Progressive's sale of convective warming blankets. See Augustine Med., 194 F.3d at 1369. In resolving that dispute, the two parties entered a settlement agreement providing that

> [Augustine] does hereby . . . release and forever discharge [Progressive] from any and all manner of action or actions . . . that [Augustine] and/or its owners . . . have, have had, or may have against [Progressive] upon or by reason of or relating to any

> acts, omissions or statements made by [Progressive] on
> or before the date of this Settlement Agreement.

Id. at 1371 (alteration in original) (emphasis added).

Later, Augustine sued Progressive for patent infringement, where the patents at issue also related to Progressive's convective warming blankets. Id. at 1370 (describing blankets as "materially identical"). Progressive maintained that the settlement agreement precluded Augustine's patent infringement claim. Id. The United States Court of Appeals for the Federal Circuit rejected the argument that the settlement agreement only applied to claims arising before the date of its execution, stating that

> [t]he phrase 'may have' is necessarily future-oriented. In the context of the Settlement Agreement, it implies a *future possibility* of Augustine having a claim. Augustine argues that the phrase 'have, have had, or may have' is restricted by the phrase which appears later in the same paragraph, 'on or before the date of this Settlement Agreement,' and argues that a claim could not have existed on or before the date of the Settlement Agreement because the post-settlement patent infringement had not yet occurred. We find this interpretation to be contrary to the clear language of the agreement. . . .

Id. at 1371 (emphasis in original). The court further elaborated that, considered in the context of the surrounding language,

> Augustine has discharged its ability to sue Progressive not for claims that existed on or before the date of the Settlement Agreement, but for claims *related to* any actions taken by Progressive on or before the date of the Settlement Agreement. Prior to and on the date of the Settlement Agreement, as well as after the date of the Settlement Agreement, Progressive was producing and marketing the convecting warming blankets at issue. Augustine's claims for patent infringement then are undeniably *related to* Progressive's production and

marketing of the goods at issue on or before the date of
the Settlement Agreement.

Id. (emphasis in original).  Here, by contrast, the Agreement only discharges <u>claims existing on or before the date of execution</u> (not claims related to any actions by Bank of America taken on or before the date of the Agreement).  Bank of America's future-oriented language argument based on the Augustine Med. decision thus lacks merit.[3]

Bank of America's remaining argument that Justad should have expressly reserved his claim similarly fails.  As noted previously, the Agreement states that it does not bar claims arising after the date of execution, such that Justad bore no obligation to expressly reserve a post-execution copyright infringement claim. Furthermore, in Augustine Med.,

---

[3] Bank of America emphasizes that the Agreement also contains some "related to" language.  (See Docket Entry 17 at 5 (citing Docket Entry 9-1, ¶ 3.a.).)  That language, however, does not link claims arising after the date of the Agreement to actions occurring before the date of the Agreement in the same fashion as did the "related to" language at issue in Augustine Med.  Notably, the sentence at issue in the Agreement refers to claims "related to [Justad's] employment and/or separation from employment" (Docket Entry 9-1, ¶ 3.a.), not the broader phrasing from Augustine Med. of claims "related to any actions taken by [the defendant] on or before the date of the [s]ettlement [a]greement," Augustine Med., 194 F.3d at 1369.  Further, the "employment" and "separation" mentioned in the Agreement concerns Justad's second stint with Bank of America, whereas the alleged misappropriation of the "Host Robot" program occurred in connection with Justad's first stint with Bank of America.  Moreover, the "related to" language in the Agreement falls within the same sentence that notes "the exception of those claims set forth in paragraph 3(e)" (Docket Entry 9-1, ¶ 3.a.), which includes "claims that arise after the date [Justad] sign[ed] the Agreement" (id., ¶ 3.e.).

-11-

> [d]uring the negotiation of the Settlement Agreement . . . Progressive sought a license from Augustine. According to Augustine, it informed Progressive that it would not agree to refrain from suing Progressive in the future for patent infringement occurring after the date of the Settlement Agreement. . . . Augustine requested that the Settlement Agreement be revised to specifically exclude claims of patent infringement, but Progressive refused, and Augustine signed the Settlement Agreement as drafted.

Id. at 1369. Against that backdrop, the Federal Circuit concluded that Augustine bore an obligation to expressly reserve future patent infringement claims from the expansive "conduct"-related settlement agreement. See id. at 1373.

Here, by contrast, the Agreement bears the hallmarks of a form document drafted by Bank of America. See generally McGhee v. Aetna Life Ins. Co., 63 F. Supp. 3d 572, 578 (W.D.N.C. 2014) (quoting sections of a Bank of America "General Release & Program Agreement" identical to the Agreement in this case). If so, the Court must construe the ambiguous language at issue against Bank of America. See, e.g., Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000) ("[W]hen an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter–the party responsible for choosing the questionable language."). Thus, at least at this stage,[4] Bank of America's reservation argument fails as to post-execution copyright claims.

---

[4] Augustine Med. arose in the summary judgment (not judgment on the pleadings) context. See Augustine Med., 194 F.3d at 1369.

-12-

**CONCLUSION**

The Court cannot resolve Bank of America's affirmative defense based on the Agreement on the face of the pleadings. The pleadings do not permit a determination of the Agreement's validity, and the plain language of the Agreement (at least if construed against Bank of America as the drafter) does not bar Justad's claim regarding Bank of America's post-execution conduct.

**IT IS THEREFORE RECOMMENDED** that Bank of America's Motion for Judgment on the Pleadings be denied.

This 9th day of August, 2017.

                                            /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                  **United States Magistrate Judge**